## Commonwealth *v*. Koss, Appellant.

Argued May 3, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Louis F. McCabe,* for appellant.

*Hugh D. Scott, Jr.,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY STADTFELD, J., June 28, 1939:

This is an appeal from the judgment and sentence of the Court of Quarter Sessions of Philadelphia County, No. 496 August Sessions, 1937, on a charge of fraudulent conversion. Trial was had November 14, 1938, before ROSEN, J., and a jury. After a verdict of guilty, motion for a new trial was refused on December 6, 1938, and on that day a sentence of imprisonment in the Philadelphia County Prison of not less than six months nor more than one year, together with payment of costs of prosecution, was imposed. The defendant is now at liberty on bail, the appeal having been made a supersedeas.

The charge of fraudulent conversion arose out of the claim of the Commonwealth's sole witness, Marie Eglick, a sister of defendant, that at various times from 1929 to 1936, she had given her brother various sums of money to keep for her after he had told her that banks were not safe.

Marie Eglick had come to this country in 1929, and had made her home with her brother and his wife. She was permitted to read from a notebook written in the Russian language, which she alleged contained notations of various moneys given to her brother for herself, and after the birth of her baby, for herself and her baby in the sum of $10 per week. During this period, she recovered in settlement of a case she had maintained against her husband's parents, the sum of $4,000, out of which she was to receive $2,000. At that time, she directed her attorney to pay over to the defendant

the sum of $925, executing a letter to that effect. The defense was that whatever moneys had been paid to the defendant by Marie Eglick, were repayments of advances made for clothing and other necessities; that Marie Eglick had never paid any board and that the $925 was in payment of back board. The defendant's testimony was corroborated to some extent by a witness, John Tatarsky, an uncle of the defendant and also of the said Marie Eglick. The prosecutrix was the sole witness on behalf of the Commonwealth.

Appellant's counsel submitted a point for charge, requesting a directed verdict for defendant, which was refused and exception granted. The refusal of this point is assigned for error. While the testimony of the prosecutrix, who was the only witness for the Commonwealth, was rather confusing and in some respects contradictory, we believe the case was one which required submission to the jury. This assignment of error is therefore overruled.

The third assignment of error complains of the faulty definition of fraudulent conversion which the court gave as follows: "Fraudulent Conversion is where one receives or has in possession any money or property of any kind and withholds or applies it to his own use, depriving the real owner thereof. I will take a moment to indicate to you the difference between Fraudulent Conversion and Larceny.

"As I pointed out in the other case, when Larceny is charged, the important factor is the taking or possession of property. Here you will notice that the receipt of the money was in a lawful manner but fraud enters into it where the money is withheld or converted or changed to another's possession."

The Act of May 18, 1917, P. L. 241, par. 1, defines the crime in the following words: "Any person having received or having possession, in any capacity or by any means or manner whatever of any money or property, of any kind whatsoever, of or belonging to any other

person, firm, or corporation, or which any other person, firm or corporation is entitled to receive and have, who fraudulently withholds, converts, or applies the same or any part thereof ...... to and for his own use and benefit ...... shall be guilty of a misdemeanor."

The trial judge evidently inadvertently omitted the vital words of the Act "of or belonging to any other person ...... or which any other person ...... is entitled to receive and have, who *fraudulently withholds, etc.*" (Italics supplied). From this language, the jury may have inferred that a mere withholding, not a *fraudulent* withholding, would render the defendant guilty. We do not think that the subsequent language used cured this defect. We believe the charge was inadequate in this respect and this assignment of error, therefore, must be sustained.

Appellant also assigns for error the definition by the trial judge of the term "reasonable doubt." This definition was as follows: "A reasonable doubt is a real doubt arising from the evidence, the kind of a doubt which in a matter of importance to yourself would cause you to hesitate and prevent you from coming to a clear conclusion."

One of the latest cases in which the question of a proper definition of a reasonable doubt is discussed is that of *Commonwealth v. Kluska*, 333 Pa. 65, 3 A. 2d, 398, wherein Mr. Justice STERN has attempted to resolve the diversity of expression. The court there approves the language of *Commonwealth v. Andrews*, 234 Pa. 597, 83 A. 412, "that the juror ought not to condemn unless he is so convinced by the evidence that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest."

The court also approved the statement in *Commonwealth v. Green*, 292 Pa. 579, 591, 141 A. 624, in which it was said that a juror should not allow himself "to

be controlled by a hesitancy over the decision of a point which he would not consider a matter of doubt or hesitate to decide if it arose in an affair of importance to himself."

But in all the cases, the doubt is expressed as such a doubt as would cause one to *hesitate*. The cases have never held that the doubt must be so strong as to *prevent* a conclusion.

This assignment of error must therefore be sustained.

The other assignments of error do not require discussion.

The judgment is reversed and new trial granted.